195 Cal.App.3d 1189 (1987)
241 Cal. Rptr. 257
In re the Marriage of ELIZABETH and ALBERT TREARSE.
ELIZABETH TREARSE JANISH, Respondent,
v.
ALBERT TREARSE, Appellant.
Docket No. C000331.
Court of Appeals of California, Third District.
October 30, 1987.
*1190 COUNSEL
John Brownston for Appellant.
Dale W. Mahon for Respondent.
*1191 OPINION
SIMS, J.
In this case, we hold that extrinsic evidence was properly admitted by the trial court to determine the meaning of an ambiguous term in a stipulated interlocutory judgment of dissolution of marriage. To the extent that In re Marriage of Benson (1985) 171 Cal. App.3d 907 [217 Cal. Rptr. 589] would dictate a contrary conclusion, we respectfully decline to follow it.

PROCEDURAL BACKGROUND
In 1972, on the day Elizabeth's marital dissolution action was to go to trial, she and her husband Albert reached "an oral stipulation in settlement of the division of community property, payment of community debts, Spousal Support, etc." The terms of the agreement were set forth in the minutes of the court. A few months later, a stipulated interlocutory judgment of dissolution was entered that fairly reflected the recitation in the clerk's minutes. The stipulated judgment is set forth in a five-page writing prepared by Elizabeth's counsel and approved as to form by Albert's counsel. It provides in pertinent part: "[Albert] is to pay [Elizabeth] the sum of $115.00 per month as spousal support until the death of one of the parties. This sum is to be increased or decreased by 10% of any increase or decrease to [Albert] in his retirement pay. Remarriage of [Elizabeth] will not terminate this clause nor is this sum modifiable by this or any other Court...." (Italics added.)
In 1984, Elizabeth commenced proceedings to try to obtain asserted arrearages in spousal support. Elizabeth contended she was entitled to increases in spousal support based on Albert's gross retirement pay while Albert contended increases should be based on his net retirement pay. After admitting extrinsic evidence as to the intent of the parties, the court concluded "retirement pay" meant gross retirement pay and entered an order accordingly.
Albert appeals from this order contending that the trial court's construction of the stipulated judgment is erroneous and that, in any event, the trial court's construction is prohibited by the Federal Uniformed Services Former Spouse's Protection Act of 1982 (FUSFSPA). (10 U.S.C. § 1408.) These contentions are unavailing and consequently we shall affirm the order.

*1192 DISCUSSION

I

The trial court properly resolved the ambiguity in the stipulated interlocutory judgment.
(1a) Contrary to Albert's contention, the trial court properly concluded, based upon extrinsic evidence, the parties intended that "retirement pay" meant "gross retirement pay."
(2) In California a party is entitled to introduce extrinsic evidence in support of his interpretation of language in an agreement embodied in a writing, provided the evidence is offered to support a meaning to which the language is reasonably susceptible. (Code Civ. Proc., § 1856, subd. (g); Pacific Gas & E. Co. v. G.W. Thomas Drayage etc. Co. (1968) 69 Cal.2d 33, 37 [69 Cal. Rptr. 561, 442 P.2d 641, 40 A.L.R.3d 1373]; Pacific Gas & Electric Co. v. Zuckerman (1987) 189 Cal. App.3d 1113, 1140-1141 [234 Cal. Rptr. 630].)
(1b) It has long been established that extrinsic evidence is admissible to prove what the parties intended by ambiguous language appearing in a marital settlement agreement incorporated and merged in a judgment of divorce or marital dissolution since "... courts do not hesitate to consider all of the admissible extrinsic evidence correctly to interpret their decrees." (Flynn v. Flynn (1954) 42 Cal.2d 55, 60 [265 P.2d 865]; see, e.g., Plumer v. Plumer (1957) 48 Cal.2d 820, 825 [313 P.2d 549]; Tuttle v. Tuttle (1952) 38 Cal.2d 419, 420-421 [240 P.2d 587]; Codorniz v. Codorniz (1950) 34 Cal.2d 811, 815 [215 P.2d 32]; In re Marriage of Paul (1985) 173 Cal. App.3d 913, 916-918 [219 Cal. Rptr. 318]; In re Marriage of Sherman (1984) 162 Cal. App.3d 1132, 1137-1139 [208 Cal. Rptr. 832].) The rule has been applied to an oral agreement later reduced to writing and incorporated in an interlocutory decree of divorce. (See, e.g., Baker v. Baker (1961) 192 Cal. App.2d 730, 734 [13 Cal. Rptr. 772].)
A limitation on the admissibility of extrinsic evidence to prove the intent of the parties to a marital settlement agreement has been recognized where a statute requires the parties to the agreement to state certain matters specifically in writing. Thus, for example, subdivision (b) of Civil Code section 4811 provides in pertinent part, "The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, ... except to the extent that any written agreement, or, if there is no written agreement, any oral agreement entered into in open court between the parties, specifically provides to the *1193 contrary." In In re Marriage of Wright (1976) 54 Cal. App.3d 1115 [126 Cal. Rptr. 894], the court considered whether a stipulated interlocutory judgment could be modified where it provided for monthly spousal support "terminating in all events and permanently in 8 years." (P. 1117, fn. omitted.) The court noted the stipulated interlocutory judgment contained no explicit language regarding nonmodifiability and concluded extrinsic evidence of intent was inadmissible because admission of the evidence would frustrate the requirement of Civil Code section 4811 that nonmodifiability be "specifically" set forth in a writing. (Id., at p. 1121.) However, the court suggested extrinsic evidence would be admissible to prove the meaning of language reasonably susceptible to an interpretation precluding modification of support. (Id., at p. 1121, fn. 10.) Wright's rationale has been followed by other cases where the modifiability of spousal support has been at issue. (See, e.g., In re Marriage of Hufford (1984) 152 Cal. App.3d 825, 831 [199 Cal. Rptr. 726]; In re Marriage of Nielsen (1980) 100 Cal. App.3d 874, 877 [161 Cal. Rptr. 272]; see also Emanuel v. Emanuel (1975) 50 Cal. App.3d 56, 59 [123 Cal. Rptr. 249] [same result under Civ. Code, § 4801, subd. (b), requiring a writing for support to continue beyond death or remarriage].)
In In re Marriage of Vomacka (1984) 36 Cal.3d 459 [204 Cal. Rptr. 568, 683 P.2d 248] our Supreme Court was called upon to determine whether spousal support could be modified where an agreement incorporated in an interlocutory judgment provided, "`The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [Joyce's] right to request spousal support from [William] shall terminate forever.'" (P. 462, italics in original.) Concluding the agreement was modifiable, our Supreme Court reasoned in part, "Contrary to William's assertions, the modification order may be viewed consistently with the language of the decree, and William has proffered no evidence to negate this consistency." (P. 465, fn. omitted, italics added.) Vomacka then cites Wright with apparent approval. (Ibid.) Thus, although not entirely clear, Vomacka appears to sanction the introduction of extrinsic evidence to prove the intent of the parties' agreement where language of the agreement is reasonably susceptible to an interpretation limiting modifiability.[1]
In In re Marriage of Benson, supra, 171 Cal. App.3d 907, Division Three of the Fourth District considered whether spousal support was modifiable where an agreement, incorporated in an interlocutory judgment, provided for support "`until modified by a court of competent jurisdiction or until the expiration of eight (8) years, whichever first occurs.'" (P. 910, italics in *1194 original.) Citing Vomacka, Hufford, and Wright, the majority of a divided court concluded, "Extrinsic evidence proffered by husband on the question of intent, i.e., testimony that he signed the marital settlement agreement with the understanding his support obligation would be limited to eight years and a letter from wife acknowledging her acceptance of the condition, was of no moment. The marital settlement agreement, accepted by the court and incorporated into the judgment, no longer exists as an independent, enforceable contract; and parol evidence concerning the intentions of litigants is of no use in the interpretation of a judgment of a court. [Citations.]" (P. 912; italics added.)
We respectfully disagree with Benson's conclusion that parol or extrinsic evidence is categorically inadmissible to determine the intentions of the parties to a marital settlement agreement incorporated in a judgment of dissolution of marriage. Nothing in the cases cited by Benson stands remotely for that proposition. Rather, as we have seen, Vomacka appears to sanction the introduction of extrinsic evidence and Hufford and Wright are decided narrowly upon the ground that Civil Code section 4811, subdivision (b) requires that nonmodifiability of support be set forth "specifically" in writing. There is no legal ground upon which to jettison the long history of California law allowing courts to receive extrinsic evidence to ascertain the intent of the parties to a marital settlement agreement even where it is incorporated and merged in a judgment.
As a practical matter, Benson's broad prohibition on extrinsic evidence leaves trial courts without a rational way to resolve ambiguities in their own judgments. Ordinarily, where a trial court hears and determines a contested matter, and enters judgment accordingly, the words of the judgment are the words of the court. The court presumably knows what it meant when it used language in a judgment and is therefore in a good position to resolve ambiguities in judgments it has written. Conversely, where judgments recite the agreement of the parties, presumably in accordance with their intent, the court has no way to ascertain the meaning of language in the judgment other than by resort to what the parties intended. Exclusion of extrinsic evidence to resolve those ambiguities would surely result in arbitrary judgments and orders that in fact are contrary to what the parties intended. We see no reason to arrive at such a result. Consequently, we think that unless the admission of extrinsic evidence is precluded by a statute, such as Civil Code section 4811, subdivision (b), such evidence should be admissible to ascertain the intent of an agreed interlocutory judgment of dissolution of marriage to the same extent such evidence would be admissible to ascertain the meaning of any other written agreement. In this case, since modifiability of spousal support was not at issue, Civil Code section 4811, subdivision (b) *1195 was inapplicable and no other statute precluded the admission of extrinsic evidence.
Here the trial court could properly conclude the term "retirement pay" was ambiguous and extrinsic evidence should be received to determine whether the parties meant gross or net pay. The extrinsic evidence received by the court without objection was set forth in a declaration under penalty of perjury executed by Elizabeth's attorney. He declared he had attended the conference where the agreement of the parties was consummated in 1972. He stated the parties agreed to use gross retirement pay to determine increases or decreases in future spousal support. Since the extrinsic evidence of the parties' intent was uncontradicted, the trial court's conclusion that "retirement pay" meant "gross retirement pay" is supported by substantial evidence and will not be disturbed by this court. (Tuttle v. Tuttle, supra, 38 Cal.2d at p. 421.)

II

FUSFSPA does not prohibit the trial court's order.
(3) Albert next contends FUSFSPA requires that the agreement be given the meaning he seeks. Albert asserts in his brief that "In the case at bar, while the stipulated and ordered sum payable by [Albert] to [Elizabeth] is labeled as `spousal support', it is clear from the record that the parties intended the foregoing to be [Elizabeth]'s portion of [Albert]'s retired pay, which, in reality, was in fact her divisible portion of this item as community property." He argues that FUSFSPA embodies congressional intent to give states a limited right to divide only "disposable" or net retirement pay (see 10 U.S.C. § 1408(d)(1)) and thus the court erred when it ruled spousal support was pegged to his gross retirement pay.
Even if the stipulated interlocutory judgment divided Albert's retirement benefits, as Albert contends, the division would not violate FUSFSPA, because, "FUSFSPA's intended limitations reach only restrictions on the garnishment of and direct payment from the retiree's disposable pay. Characterization of retirement pay remains a state law question." (Casas v. Thompson (1986) 42 Cal.3d 131, 151 [228 Cal. Rptr. 33, 720 P.2d 921]; cert. den. Dec. 8, 1986 479 U.S. 1012 [93 L.Ed.2d 713, 107 S.Ct. 659].) Neither garnishment nor direct payment is at issue on this appeal.
However, the interlocutory judgment and the minutes of the 1972 dissolution hearing make clear that the stipulated judgment did not divide a community property interest. Rather, Elizabeth waived her right to a community property interest in Albert's military retirement. In exchange for *1196 giving up this right, Elizabeth accepted Albert's offer of lifetime spousal support. Thus, the stipulated interlocutory judgment neither divides nor allocates Albert's retirement pay. Instead, it provides for spousal support in an amount that fluctuates with changes in Albert's retirement pay. The reference to Albert's retirement pay merely establishes a mechanism (like a cost-of-living index) for calculating changes in spousal support. Nothing in FUSFSPA precludes the parties from using changes in retirement pay for this purpose. (Ibid.)
Elizabeth has requested sanctions for a frivolous appeal; however, her request is denied. Whether Elizabeth should be awarded attorney's fees incurred on appeal is a matter properly addressed to the trial court. (In re Marriage of Carpenter (1986) 188 Cal. App.3d 604, 617 [231 Cal. Rptr. 783].)

DISPOSITION
The order appealed from is affirmed.
Sparks, Acting P.J., and Watkins, J.,[*] concurred.
A petition for a rehearing was denied November 23, 1987.
NOTES
[1] Even assuming for purposes of argument Vomacka discourages admission of extrinsic evidence, any discouragement would be attributable to Civil Code section 4811, subdivision (b) requiring that a writing "specifically" set forth nonmodifiability of spousal support.
[*] Assigned by the Chairperson of the Judicial Council.