[No. G004469. Fourth Dist., Div. Three. Jan. 27, 1988.]

In re the Marriage of PAMELA and DONALD ZLATNIK.
PAMELA ZLATNIK, Respondent, v.
DONALD ZLATNIK, Appellant.

**COUNSEL**

Marjorie G. Fuller for Appellant.

John R. Schilling and Linda F. England for Respondent.

**OPINION**

**SONENSHINE, Acting P. J.**—Donald Zlatnik contends the trial court lacked jurisdiction to extend his spousal support obligation beyond the termination date to which he and his former wife, Pamela Zlatnik, stipulated. We agree and, accordingly, reverse.

I.

Donald and Pamela Zlatnik dissolved their 14-year marriage in bifurcated proceedings in December 1978. A few months later, they entered into a written stipulation, drafted by Donald's counsel, dividing their community property and awarding spousal support, child support and custody.[1] An order prepared pursuant to and contemporaneously with the stipulation was approved by the court.

The stipulation and order were virtually identical in content with the exception of paragraph 6 in each. Paragraph 6 of the stipulation read: "That husband shall pay to wife as and for spousal support the sum of $1,900.00 per month, payable on the 1st day of each and every month, commencing April 1, 1979, and continuing thereafter on the 1st day of each and every month for a period of seven (7) years, unless sooner terminated by the death or remarriage of wife, or the death of [husband]. *Spousal support shall be modifiable as to amount only by further order of court upon a showing of change of circumstances, but in no event shall husband be obligated to pay spousal support to wife after April 30, 1986* [.]" (Italics added.)

Paragraph 6 of the order stated: "[Husband] shall pay to [wife], as and for spousal support, the sum of $1,900.00 per month, payable on the 1st day of each month, commencing April 1, 1979, and continuing thereafter on the 1st day of each month for a period of seven (7) years, unless sooner terminated by the death or remarriage of [wife], or the death of [husband], or

---

[1] At the time of the dissolution proceedings, the Zlatniks' three children were 14, 12 and 9 years old.

until further order of Court. *In no event shall [husband] be obligated to pay spousal support to [wife] after April 30, 1986."* (Italics added.)

In 1982, Pamela sought and obtained an increase in spousal support to $2,000 per month. On February 28, 1986, she filed another request for modification, this time seeking an extension of Donald's obligation to pay. After a hearing on May 30, 1986, the court granted Pamela's request and ordered that support continue at $2,000 per month until Pamela's death, remarriage, or further order of court. Donald's appeal followed.

## II.

■ The California Supreme Court has interpreted Civil Code section 4811, subdivision (b)[2] as "permit[ting] the parties to agree that the provisions of any agreement or order for the support of either party shall not be subject to subsequent modification or revocation by court order." (*In re Marriage of Vomacka* (1984) 36 Cal.3d 459, 462-463 [204 Cal.Rptr. 568, 683 P.2d 248].) Further, pursuant to section 4801, subdivision (d), "[a]n order for payment of an allowance for the support of one of the parties shall terminate at the end of the period specified in the order and shall not be extended *unless the court in its original order retains jurisdiction.*" (Italics added.) ■ Here, both the stipulation and the order[3] stated, unequivocally, spousal support was not to be paid after April 30, 1986. As we shall explain, this manifestation of the parties' intent precluded any extension of Donald's obligation to pay.

---

[2] Civil Code section 4811, subdivision (b) states in pertinent part: "All orders for the support of either party based on the agreement shall be deemed law-imposed and shall be deemed made under the power of the court to make the orders. The provisions of any agreement or order for the support of either party shall be subject to subsequent modification or revocation by court order, except as to any amount that may have accrued prior to the date of filing of the notice of motion or order to show cause to modify or revoke, and except to the extent that any written agreement, or, if there is no writen agreement, any oral agreement entered into in open court between the parties, specifically provides to the contrary."

All further statutory references are to the Civil Code.

[3] Donald and Pamela disagree as to whether the trial court properly based its ruling upon the order rather than the stipulation. Such argument is irrelevant because both parties look to an insignificant ambiguity. The parties compare the stipulation which states "[s]pousal support shall be modifiable as to amount only by further order of court upon a showing of change of circumstances," and the order which provides for the payment of spousal support "for a period of seven (7) years, unless sooner terminated by the death or remarriage of [wife], or the death of [husband], or until further order of Court."

Pamela contends the order must prevail over the stipulation. We agree. (See *In re Marriage of Benson* (1985) 171 Cal.App.3d 907, 912 [217 Cal.Rptr. 589].) But the order, regardless of whether it adopts the exact words of the stipulation, *implies* the trial court could exercise its power to modify support *only* if it found a change of circumstances. Change of circumstances is not, however, the issue. The question presented is whether the court had jurisdiction to modify and thereby extend the *duration* of support.

In *In re Marriage of Vomacka, supra,* 36 Cal.3d 459, William and Joyce Vomacka stipulated in open court to the provisions and entry of an interlocutory judgment of dissolution of marriage. The agreement stated: " '[William] shall pay to [Joyce], as and for spousal support, the sum of Two Hundred Seventy-five Dollars ($275.00), . . . commencing September 1, 1979 to continue each month thereafter until further order from the Court, the death of either party, the remarriage of [Joyce], or August 1, 1982, whichever first occurs. *The Court shall retain jurisdiction regarding spousal support until September 1, 1984, at which time [Joyce's] right to request spousal support from [William] shall terminate forever.*' (Italics added.)" (*Id.,* at pp. 461-462.)

On June 29, 1982, before the August 1st deadline, Joyce filed an order to show cause to modify spousal support. The trial court granted her request and ordered William to continue to pay spousal support at an increased monthly rate of $600 " '. . . until the death of either party, remarriage of [Joyce], or until further order of the court.' " (*Id.,* at p. 462.) The court's notice of intended decision explained: " 'To find from an agreement that there is a termination of spousal support, the Court must find explicit language of such termination. The alleged termination provision herein is not sufficiently explicit to find such termination (purports to terminate respondent's right to ask for additional support; does not address itself explicitly to the termination of support). Thus, the Court finds that there is no absolute termination herein on September 1, 1984. [Citation.]' " (*Ibid.*)

 The Supreme Court affirmed the trial court's order, holding that where jurisdiction to award or grant spousal support is reserved until a specific date, the court retains fundamental jurisdiction until that date to take new action concerning such support. Such new judicial action may include an extension of spousal support beyond the last date the court can act. The trial court may not, however, extend spousal support if the order expressly terminates the court's jurisdiction to do so.

In *In re Marriage of Benson, supra,* 171 Cal.App.3d 907, the parties' marital settlement agreement and the interlocutory judgment incorporating that agreement, provided: " '[Husband] shall pay to [wife] as and for spousal support the sum of $650.00 per month, payable on the 1st day of each month, commencing June 1, 1977, and continuing until the death of either party, [wife's] remarriage, until modified by a court of competent jurisdiction or until the expiration of eight (8) years, whichever first occurs.' " (*Id.,* at p. 910, italics omitted.) After five years, the wife petitioned for additional support. The trial court increased the husband's obligation to $1,000 per month " 'continuing until August 1, 1985, on which date the spousal support will be reduced to $1.00 per month, . . . and continuing until further

order of Court, [wife's] remarriage, or the death of either party, whichever first occurs.'" (*Ibid.*)

The husband appealed, arguing the court did not have authority to extend spousal support past July 20, 1985.[4] We affirmed,[5] finding "the reserved jurisdiction to modify was sufficient to permit the trial court to extend the duration of the order." (*Id.,* at p. 913.)

In *In re Marriage of Foreman* (1986) 183 Cal.App.3d 129 [228 Cal.Rptr. 4], Marshall and Burnice Foreman entered into a marital settlement agreement providing for Marshall to pay "'the sum of $1,300 per month, with the first of said payments to be made on or before May 5, 1974 . . . until [Burnice] remarries, either party dies, or a total of ten years, whichever event first occurs. Thereafter, said spousal support payments shall automatically reduce to a jurisdictional amount of $1.00 per year for an additional one year, and then terminate. The said spousal support payments provided hereunder, shall not be modifiable under any circumstances until June 30, 1977. Thereafter, said support payments may be modified by the court on a proper showing by either party.'" (*Id.,* at p. 131.) During the 11th year, while the court retained jurisdiction to modify, Burnice requested the monthly payments be increased *and* asked for an extension of spousal support beyond the 11th year. The trial court granted an increase to $1,300 for the 11th year, but determined it had no jurisdiction to modify the award's duration.

In affirming the trial court, the *Foreman* court distinguished *Vomacka* and *Benson*. It found the decrees in those cases contained "language from which reservation of jurisdiction may be implied, i.e., the court-ordered support would 'continue until further order of the court' or 'until modified by a court of competent jurisdiction.' Here there is no such language. The only language of modification refers to modifying spousal support *payments*." (*Id.,* at p. 133.) Simply stated, the *Foreman* court found "no language which reasonably can be interpreted as reserving jurisdiction to avoid the effect of section 4801, subdivision (d) . . . ." (*Id.,* at p 134.)[6]

---

[4] This date was the 8th anniversary of the entry of the interlocutory judgment of dissolution.

[5] See dissenting opinion and *In re Marriage of Trearse* (1987) 195 Cal.App.3d 1189, 1191 [241 Cal.Rptr. 257].

[6] The support in *Foreman* extended for 11 years; in the final year the wife was to receive $1. Pamela erroneously argues Mrs. Foreman "brought her request for an increase during the eleventh year, after the ten year deadline set for termination. Had [she] brought her request prior to the termination date, the court would still have had jurisdiction to extend support beyond the termination date."

Actually, Mrs. Foreman's request was timely. Moreover, the court did not extend the duration of support because it found "there [was] no conditional clause which can be interpre-

The jurisdictional issue was addressed most recently in *In re Marriage of Harbach* (1987) 195 Cal.App.3d 629 [240 Cal.Rptr. 698]. There, an interlocutory judgment required the husband to pay spousal support " 'until July 14, 1984 at which time [his] obligation to pay spousal support . . . shall cease and terminate.' " (*Id.,* at p. 630.) The parties later stipulated to a modification of that judgment, providing, among other things, for the husband to pay spousal support " 'until the death of either party, [the wife's] remarriage, or December 31, 1986, whichever first shall occur.' " (*Ibid.*) Paragraph 7 of the modified decree also "recite[d] the payment of spousal support 'is premised' upon the expectation [the wife] would obtain an advanced degree, set out her academic obligations to enroll for at least nine credit hours for each semester, required a report to [the husband] about her progress and provided that her failure to take the minimum hours would be a change of circumstance, entitling [the husband] to move for support modification." (*Id.,* at pp. 630-631.) The paragraph concluded: " 'Other than as set forth in this paragraph, spousal support shall be non-modifiable both as to term and amount.' " (*Id.,* at p. 631.)

In January 1986, the wife sought a deferral of the termination date. She had just learned an internship of 3,000 hours was required to secure her certificate as a family and child counselor. The trial court granted her request and ordered support be paid for an additional four months, until April 1987. In affirming the trial court, the appellate court concluded: "[J]urisdiction was retained by the court to modify the decree in the event [the wife] failed to carry out her scholastic obligations. That retained jurisdiction supports the extension of the term to carry out the intent of the parties as expressed in paragraph 7. [Citation.]" (*Id.,* at p. 634.)

▆▆▆ The *Foreman* court's refusal to extend the duration of support was premised on the absence of language, such as that found in *Vomacka* and *Benson,* which could be construed as reserving jurisdiction to do so. *Our* refusal, however, is based upon express language of termination in the parties' stipulation: The clause, "in no event shall [Donald] be obligated to pay spousal support to [Pamela] after April 30, 1986," is clear and unequivocal.

▆▆▆ ▆▆▆ But Pamela asserts termination of jurisdiction to modify spousal support requires a finding of "explicit language of such termination." (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 465.)[7] And,

---

ted as reserving jurisdiction to extend the period of support beyond that specified in the decree . . . ." (*In re Marriage of Foreman, supra,* 183 Cal.App.3d at p. 133.)

[7] While explicit language is *not* essential to *reserve* jurisdiction to extend support beyond a specified termination date (*In re Marriage of Benson, supra,* 171 Cal.App.3d at p. 911),

relying on *In re Marriage of Hufford* (1984) 152 Cal.App.3d 825 [199 Cal.Rptr. 726], she complains in order to divest the court of its power to modify, "a specific provision concerning judicial modification" is required. (*Id.,* at p. 835.) Thus, she argues the stipulation and order here "suffer the same deficiencies as those discussed at length in *Vomacka* and in *Benson.*"

To the contrary, the clause quoted above satisfies both of Pamela's concerns: It contains "explicit language of termination," and constitutes a "specific provision concerning judicial modification." In light of the foregoing, we conclude the trial court lacked jurisdiction to extend spousal support beyond April 30, 1986.

The order is reversed. Appellant to receive costs.

Crosby, J., and Taylor (G.L.), J.,* concurred.

Respondent's petition for review by the Supreme Court was denied April 20, 1988.

---

explicit language *is* required to *terminate* jurisdiction. (*In re Marriage of Vomacka, supra,* 36 Cal.3d at p. 465.)

* Assigned by the Acting Chairperson of the Judicial Council.